IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FANATICS RETAIL GROUP (DREAMS), LLC, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 20-0794 (MN) |
| v. | ) ) | |
| ROBERT TRUAX, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Jody C. Barillare, Brian A. Herman, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE – Attorneys for Plaintiff

Michael D. DeBaecke, F. Troupe Mickler IV, ASHBY & GEDDES, P.A., Wilmington, DE – Attorneys for Defendant.

December 1, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion of Fanatics Retail Group (Dreams), LLC ("Plaintiff" or "Fanatics") for judgment on the pleadings against Robert Truax ("Defendant" or "Truax") pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (*See* D.I. 8). For the reasons set forth below, the Court will GRANT Plaintiff's motion.

**I.     BACKGROUND**

This action arises from a February 1, 2019 transaction ("the Transaction") between Plaintiff, the Comet Clothing Company, LLC ("Comet"), and Truax (Comet's Chief Executive Officer and holder of a significant amount of Comet's equity). (*See* D.I. 1 ¶¶ 1, 12). The Transaction was memorialized in three documents (together, "the Agreements")[1]: a promissory note ("the Note"), a guaranty agreement ("the Security and Guaranty Agreement"), and a loan modification and membership interest Redemption Agreement ("the Redemption Agreement"). (D.I. 1, ¶ 7; *see generally* D.I. 1–1).

Pursuant to the Redemption Agreement, Plaintiff, then part-owner of Comet, forgave approximately $6.6 million in loans previously issued to Comet and redeemed its fifty-one percent (51%) ownership interest in Comet in exchange for Comet's promise of payment under the Note and Truax's guaranty of Comet's payment pursuant to the Security and Guaranty Agreement. (*See* D.I. 1, ¶ 12; D.I. 1–1 at 22). Under the Note, Comet promised to pay Plaintiff $2,230,027.77 plus interest on November 1, 2019. (D.I. 1 ¶, 12; D.I. 1–1 at 2). Pursuant to the Security and Guaranty Agreement, Truax agreed to "absolutely and unconditionally guarantee[], as a guaranty

---

[1]     The terms of the Note, the Security and Guaranty Agreement, and the Redemption Agreement do not appear to be in dispute – Truax does not address the contents of the documents beyond stating that the Agreements "speak for themselves." (*See* D.I. 6 *passim*).

of payment and performance and not merely as a guaranty of collection, prompt payment" of the Note "when due." (D.I. 1, ¶ 13, 23; D.I. 1–1 at 16). Additionally, Truax waived all demands for payment and notices of nonpayment. (D.I. 1, ¶ 24; D.I. 1–1 at 17). In the Security and Guaranty Agreement Truax expressly waived all defenses to enforcement of his guaranty based on Comet's bankruptcy or challenges to the validity of the underlying debt:

> The Company Party [Truax] hereby absolutely and unconditionally guarantees, as a guaranty of payment and performance . . . prompt payment when due, whether at stated maturity, by required prepayment, upon acceleration, demand or otherwise . . . . Without limiting the generality of the foregoing, the Guaranteed Obligations shall include any such indebtedness, obligations, and liabilities, or portion thereof, which may be or hereafter become unenforceable or compromised or shall be an allowed or disallowed claim under any proceeding or case commenced by or against the Company or any Company Party under the Bankruptcy Code of the United States. This Guaranty shall not be affected by the genuineness, validity, regularity or enforceability of the Secured Liabilities or any instrument or agreement evidencing any Secured Liabilities, or by the existence, validity, enforceability, perfection, nonperfection or extent of any collateral therefor, or by any fact or circumstance relating to the Secured Liabilities which might otherwise constitute a defense to the obligations of the Company or the Company Party, or any of them, under this Guaranty, and each Company Party hereby irrevocably waives any defenses it may now have or hereafter acquire in any way relating to any or all of the foregoing.

(*See* D.I. 1-1 at 16).

The parties agree that Comet failed to pay its obligations under the Note before, on, or after the maturity date of November 1, 2019. (D.I. 1, ¶ 26; D.I. 6, ¶ 26). The parties also agree that Truax has not paid according to his obligations under the Security and Guaranty Agreement. (D.I. 1, ¶ 26; D.I. 6, ¶ 26).

Plaintiff filed its complaint of June 11, 2020 asserting one count for "Breach of Guaranty." (D.I. 1). Defendant filed an answer on August 7, 2020. (D.I. 6). On August 19, 2020, Plaintiff

filed the instant motion for judgment on the pleadings. (D.I. 8). The motion has been fully briefed. (*See* D.I. 9; D.I. 14; D.I. 17).

## II. LEGAL STANDARD

After the pleadings have closed, a party may move for judgment on the pleadings. FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings will be granted . . . if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Serv's, Inc.*, 938 F.3d 466, 470 n. 7 (3d Cir. 2019) (ellipsis in original) (citing *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008). The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), "but will not accept unsupported conclusory statements" *DiCarlo*, 530 F.3d at 262-63.

When reviewing a motion for judgment on the pleadings filed by a plaintiff, the Court must determine "whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law." *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, 226 F. Supp. 3d 320, 355 (D.N.J. 2016) (quoting *U.S. v. Blumenthal*, 315 F.2d 351, 352 (3d Cir. 1963) ("In considering such a motion by the plaintiff for judgment on the pleadings the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is entitled to judgment as a matter of law.")),

## III.     DISCUSSION

### A.     Guaranty Contracts

"Under Delaware law,[2] a contract of guaranty is the promise to answer for the payment of some debt or for the performance of some obligation by another on the default of that third person who is liable in the first instance." *Falco v. Alpha Affiliates, Inc.*, No. Civ. A. 97-494 (MMS), 1997 WL 782011, at *5 (D. Del. Dec. 10, 1997) (citing *Jones Motor Co., Inc. v. Teledyne, Inc.*, 690 F. Supp. 310, 313 (D. Del 1988). The guaranty is itself a separate contract involving duties and responsibilities apart from those underlying the contract to which the guaranty is collateral. *Teledyne*, 690 F. Supp. at 313.

A guaranty may be either conditional or unconditional (the latter is also referred to as "iron-clad" or "absolute"). *Rister v. Community Bank of Rowan.*, No. 14-cv-5079, 2015 WL 5585572, at *4 (E.D. Pa. Sept. 22, 2015). An unconditional guaranty is one "whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation." *Id.* (quotation omitted). Such a guaranty constitutes "an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform." *Id.* (quotation omitted). And "there is no limitation on the right of the creditor to bring an action directly against the guarantor when the principal commits a default." *Id.*; *accord In re Total Containment, Inc.*, 906 F. Supp. 1427, 1430 (D. Colo. 1995); *Ajax Rubber Co. v. Gam*, 151 A. 828, 830 (Del. Super. 1923) (stating that in an absolute guaranty, "the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity").

---

2      The Guaranty Agreement states: "This Agreement shall be governed by, and construed in accordance with, the internal laws of the State of Delaware, without regard to principles of conflicts of law." (D.I. 1-1 at 15, ¶ 12).

4

To recover on an absolute guaranty, a plaintiff must prove: (1) an absolute and unconditional guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty. *Center Capital Corp. v. JR Lear 60-099, LLC*, Civ. Act. No. 08–508–JJF–MPT, 2010 WL 3000188, at *3 (D. Del. June 23, 2010); *c.f. A.G. Barr v. Agribusiness Partners Int'l, L.P.*, No. Civ. A. 02C–09–120–JR, 2003 WL 1873848, at *2 n.11 (Del. Super. Apr. 14, 2003) ("To state a valid claim on an unconditional guaranty of payment, a creditor must allege the existence of the guaranty delivered to the creditor securing repayment of a debt which is in default.") (citation omitted).

### B. Truax Admits Entering into an Unconditional Guaranty Contract with Plaintiff on a Valid Debt and Failing to Pay upon Demand

Plaintiff alleges, and Truax admits, that Truax signed the Security and Guaranty Agreement. (*See* D.I. 1, ¶ 20; D.I. 6, ¶ 31; D.I. 1-1 at 19). Under the terms of the Security and Guaranty Agreement, Truax (referred to as "the Company Party") "absolutely and unconditionally guarantee[d], as a guaranty of payment and performance and not merely as a guaranty of collection, prompt payment" on the Note "when due." (*See* D.I. 1–1 at 16). Plaintiff also alleges, and Truax admits, that the Note was executed and delivered to Truax and Comet, thereby creating a repayment obligation on Comet's behalf in the amount of $2,230,027.77, due and payable on November 1, 2019. (*See* D.I. 1, ¶¶ 15, 16; D.I. 6, ¶¶ 15, 16; *see generally* D.I. 1-1 at 2-6).

As previously noted, the parties do not dispute that Comet was obligated to repay the amount outstanding under the Note to Plaintiff on November 1, 2019. (*See* D.I. 1, ¶¶ 15, 16; D.I. 6, ¶¶ 15, 16; *see generally* D.I. 1-1 at 2-6). Plaintiff alleges, and Truax admits, that Comet did not pay the Note when due. (*See* D.I. 1, ¶ 26; D.I. 6, ¶ 26). Finally, Plaintiff alleges, and Truax admits, that Truax failed to fulfill his obligation under the guaranty by refusing to pay the amount outstanding under the Note when Comet failed to do so. (*See* D.I. 1, ¶ 2; D.I. 6, ¶ 2). Accordingly,

5

the undisputed facts prove that Truax signed an absolute and unconditional guaranty to repay $2,230,027.77 on Comet's behalf and failed to do so. Thus, absent a viable affirmative defense on Truax's part, Plaintiff will be entitled to judgment on the pleadings.

### C. Truax's Asserted Affirmative Defenses

Truax asserts ten (10) "additional defenses" in his answer, which the Court addresses below.

#### 1. First and Second Defenses

Truax's first and second defenses challenge personal jurisdiction over Truax and venue in this Court. (D.I. 6 at 11-12). These defenses are without merit. Truax admits that he signed and is a party to the Redemption Agreement executed in connection with and referenced in the Note and the Security and Guaranty Agreement.[3] (D.I. 6, ¶¶ 7, 18; *see generally* D.I. 1-1 at 22-30). In the Redemption Agreement, all parties submitted to "the exclusive jurisdiction of (a) Delaware and (b) the United States District Court for the District of Delaware . . . for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby." (D.I. 1-1 at 27, § 15). In the Redemption Agreement, Truax further agreed that "[e]ach of the Parties irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement or the transactions contemplated hereby in . . . the United States District Court for the District of Delaware . . . and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum." *Id.* The Guaranty Agreement that forms the basis of this action is one of the transactions contemplated in the Redemption Agreement. *Id.* at 22 (referring to the "Security Agreement" as one of the

---

[3] Truax is defined as one of the "Parties" in the Redemption Agreement.

"Transaction Documents"). Thus, Truax's first and second defenses fail under the plain language of the Redemption Agreement.

### 2. Third Defense

Truax's third defense asserts that "the Complaint fails to state a claim upon which relief can be granted." (D.I. 6 at 12). For the reasons discussed (*supra* at III.B), this defense fails.

### 3. Fourth, Eighth, and Tenth Defenses

Truax's fourth, eighth and tenth defenses challenge the validity of the underlying debt, alleging that Plaintiff committed unspecified bad acts against Comet impacting its ability to pay the debt. (D.I. 6 at 13-14). Specifically, these defenses state:

#### FOURTH DEFENSE

> The claim asserted against Truax is barred by Plaintiff's willful misconduct, lack of good faith, its breaches of the covenant of good faith and fair dealing, and/or its unclean hands. By its sharp business practices, unfair and anti-competitive conduct, and improper and excessive control exercised in its business dealings with Comet and over the business and affairs of Comet, Plaintiff caused Comet to suffer business losses and harm and ultimately to be in a position where, inter alia, Comet was unable to pay or restructure the Note. Eventually, Comet was left with no choice but to file bankruptcy, where Plaintiff has continued its efforts at every turn to sink Comet's reorganization prospects and put Comet out of business. Allegations regarding the foregoing have been made and/or filed of record in the Comet bankruptcy case. Truax asserts such allegations here and reserves the right to assert additional claims and allegations during the course of this litigation. Truax asserts all rights, benefits, and protections available under applicable state law, including under any applicable Uniform Commercial Code provisions.

#### EIGHTH DEFENSE

> Any obligations of Truax under the Security and Guaranty Agreement were released, discharged, and/or excused, in whole or in part, due to the conduct and actions of Plaintiff which served to (a) impair the value of collateral posted by Comet in favor of Plaintiff and/or (b) impair the ability of Truax to recover from Comet any amounts Truax may be found liable to pay Plaintiff.

> Truax reserves all rights under applicable law, including under any applicable Uniform Commercial Code provisions, with respect to all of the foregoing.
>
> TENTH DEFENSE
>
> The claim asserted by Plaintiff should be barred to the extent the underlying Security and Guaranty Agreement, and any obligations of Truax thereunder, were the product of and/or resulted from duress, coercion, or the exercise of similar undue influence.

(D.I. 6 at 12-14).

As noted above, although a court must accept the nonmoving party's well-pleaded factual allegations as true, it does "not accept unsupported conclusory statements." *DiCarlo*, 530 F.3d at 262-63.  Defendants fourth, eighth and tenth defenses are merely conclusory statements without underlying factual averments to support them.

Moreover, in his fourth defense, Defendant alleges that Plaintiff violated the covenant of good faith and fair dealing with regard to the Agreements.  The covenant of good faith and fair dealing, under Delaware law, helps to fill gaps or define unclear terms in the language of a contract. *See Dunlap v. State Farm Fire and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005).  "Existing contract terms control, however, such that implied good faith cannot be used to circumvent the parties' bargain, or to create a free-floating duty . . . unattached to the underlying legal document." *Id.* (internal citation and alterations omitted).  As the relevant terms of the Note, the Security and Guaranty Agreement, and the Redemption Agreement are clear with regard to the operative text, the covenant of good faith and fair dealing is inapposite to their respective interpretation.

Finally, Truax's unconditional guaranty included an irrevocable waiver of any defense regarding the enforceability and validity of the underlying debt.  (*See* D.I. 1–1 at 16).  Such waivers are valid and common.  *See, e.g.*, *Rister*, 2015 WL 5585572, at *4; *Addy v. Piedmonte*, Civ. Act. No. 3571-VCP, 2009 WL 707641, at *16 (Del. Ch. Mar. 18, 2009) (holding waiver of defenses in

guaranty to be enforceable). For all of these reasons, Truax's fourth, eighth and tenth defenses fail.

### 4. Fifth Defense

Truax's fifth defense asserts that Fanatics "failed to mention and account for various terms and provisions set forth in Section 18 of the Security and Guaranty Agreement." (D.I. 6 at 12-13). Section 18 limits Truax's liability to the extent necessary to prevent his obligations being treated as an avoidable fraudulent transfer under Section 548 of the Bankruptcy Code or analogous state law. (D.I. 6 at 12-13 (citing D.I. 1-1 at 16 (". . . provided that the liability of [Truax] individually with respect to this Guaranty shall be limited . . . to the largest amount that would not render [his] obligations hereunder subject to avoidance under Section 548 of the United States Bankruptcy Code . . . ."))).

Truax claims that the Court cannot apply the limitation without development of a record "surrounding execution of" the Guaranty Agreement and the "financial condition" of Comet and Truax as of the time of execution, as well as "applicable fraudulent transfer law, etc." (D.I. 14 at 8-9). (D.I. 6 at 13; *see* D.I. 1–1 at 16). Truax, however, is not currently in bankruptcy, nor has he directed the Court to any indicia that he is likely to enter bankruptcy in the future such that any transfer could come into question.[4] Comet's pending bankruptcy has no bearing on Truax's liability under the guaranty. *See Fr. Winkler KG v. Stoller*, 839 F.2d 1002, 1008 (3d Cir. 1988) ("[Debtor]'s discharge from its obligations under the notes by operation of the Bankruptcy Code does not affect a release of [a guarantor] as guarantor.").

---

[4] Comet filed for chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Minnesota on June 12, 2020. (D.I. 6, ¶ 13).

9

### 5. Sixth Defense

Truax's sixth defense asserts "[a]ny prosecution of a suit against Truax under the Security and Guaranty Agreement should await the outcome of proceedings in the Comet bankruptcy case . . . ." (D.I. 6 at 13). This is not a defense so much as a request for this Court to stay proceedings during Comet's pending bankruptcy. As previously noted, Comet's bankruptcy has no bearing on Truax's liability. Indeed, Truax admittedly defaulted upon his obligation as guarantor for the Note when Comet failed to pay on November 1, 2019. *See* D.I. 1 ¶¶ 15, 16; D.I. 6 ¶¶ 15, 16; *see generally* D.I. 1–1 at 2-6). Comet did not file for bankruptcy until June of 2020, after Plaintiff's complaint was filed – by that time, Plaintiff's claim against Truax had been ripe for more than six months. To suspend enforceability of a guaranty pending bankruptcy defeats the purpose of requiring a guarantor in the first place – to ensure payment on a loan if the principle is unable to pay.

### 6. Seventh Defense

Truax's seventh defense asserts "failure of consideration and/or insufficient, inadequate, or illusory consideration provided to Comet and/or to Truax." (D.I. 6 at 13). Delaware courts do not examine the substance of the consideration in a contract, only whether or not consideration exists. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (courts should "limit inquiry into consideration to its existence and not whether it is fair or adequate"). Consideration sufficient for contract formation need only "confer[] a benefit upon the promisor or cause[] a detriment to the promisee and must be an act, forbearance, or return promise bargained for and given in exchange for the original promise." *Laifail, Inc. v. Learning 2000, Inc.*, 2002 WL 31667861, at *4–5 (D. Del. Nov. 25, 2002) (finding sufficient consideration for contract formation where the promisee's "legal detriment" included the "release of a dispute"). Here, Truax, by

signing the Redemption Agreement, "agreed to guaranty the Company's [Comet's] obligations . . . under the Promissory Note, as set forth under the terms of the Security [and Guaranty] Agreement," "[i]n consideration of the Seller's [Fanatics'] subsequent transfer to the Company [Comet] of all the Seller's [Fanatics'] right, title and interest" in Comet. D.I. 1-1 at 22. In other words, Plaintiff's membership interest in Comet was conveyed to Comet in consideration for Truax's guaranteeing of the Note. (D.I. 1–1 at 22). Accordingly, this defense fails.

       7.     Ninth Defense

Truax's ninth defense states that "Truax asserts all rights of setoff and recoupment," and is not addressed in his brief. (D.I. 6 at 14). Absent any support or explanation, this cannot preclude entry of judgment on the pleadings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (D.I. 8) is GRANTED. An appropriate order will follow.

11